| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MISSOURI, ST. LOUIS A. PHILIP RANDOLPH INSTITUTE, and GREATER KANSAS CITY A. PHILIP RANDOLPH INSTITUTE,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN R. ASHCROFT, in his official capacity as the Missouri Secretary of State, and<br><br>JOEL WALTERS, in his official capacity as the Director of the Missouri Department of Revenue,<br><br>Defendants. | No. 2:18-cv-04073-BCW |

**SUGGESTIONS IN OPPOSITION TO DEFENDANT ASHCROFT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

A.  Plaintiffs Injuries Are Fairly Traceable to Defendant Ashcroft's Conduct Because, as Missouri's Chief Election Official, His Coordination Duties Include Ensuring Compliance with Missouri's Responsibilities Under the NVRA. .......................................... 3

  1. Defendant Ashcroft's Underlying Arguments that He Cannot Be Held Responsible for Missouri's Section 5 Violations Fail as a Matter of Law. ............................................. 3

  2. The Complaint Demonstrates a Clear Causal Connection Between Plaintiffs' Injuries and Defendant Ashcroft's Failure to Meet His Obligations as the Chief State Election Official. ...................................................................................................... 8

B.  Plaintiffs' Injuries Cannot Be Fully Redressed If Defendant Ashcroft Is Not a Party to the Suit. ................................................................................................................... 10

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action NC v. Strach*,
   216 F. Supp. 3d 597, 623 (M.D.N.C. 2016) ........................................................................3, 12

*Arizona v. Inter Tribal Counsel of Arizona, Inc.*,
   570 U.S. 1 (2013)......................................................................................................................8

*Davis v. Anthony*,
   886 F.3d 674 (8th Cir. 2018) ...................................................................................................2

*Harkless v. Brunner*,
   545 F.3d 445 (6th Cir. 2008) ..........................................................................................6, 7, 10

*Hillsborough Cty. v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985)..................................................................................................................8

*Int'l Paper Co. v. Ouellette, et al.*,
   479 U.S. 481 (1987)..................................................................................................................8

*Iowa League of Cities v. Environmental Protection Agency*,
   711 F.3d 844 (8th Cir. 2013) ..........................................................................................2, 8, 10

*N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*,
   No. 16-CV-01274, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016)............................................7

*Scott v. Schedler*,
   771 F.3d 831 (5th Cir. 2014) ............................................................................................4, 7, 8

*Titus v. Sullivan*,
   4 F.3d 590 (8th Cir. 1993) .......................................................................................................3

*United States v. Missouri*,
   535 F.3d 844 (8th Cir. 2008) ........................................................................................ passim

*Vladez v. Herrera*,
   No. 09-CV-00668 ............................................................................................................6, 7, 8

**U.S. Constitution**

Article III .........................................................................................................................2, 3, 10, 12

**Statutes**

52 U.S.C. § 20501............................................................................................................... passim

52 U.S.C. § 20504................................................................................................................1, 3

52 U.S.C. § 20509.........................................................................................................1, 4, 5, 11

52 U.S.C. § 20510........................................................................................................1, 7, 9

S. Rep. No. 103-6 (1993) ...............................................................................................7

Mo. Rev. Stat. § 115.136.1 ........................................................................................1, 4, 5

Mo. Rev. Stat § 115.158 ...............................................................................................12

Mo. Rev. Stat. § 115.160(3)......................................................................................11, 12

# INTRODUCTION

This case seeks to ensure that Missouri provides its citizens with the opportunities to register to vote required by Section 5 of the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.* ("NVRA"). *See id.* § 20504. As Missouri's Secretary of State, Defendant John R. Ashcroft is the state's chief election official and is responsible for Missouri's implementation of the NVRA. *See id.* § 20509; Mo. Rev. Stat. § 115.136.1.

In his Motion to Dismiss, Defendant Ashcroft seeks to disclaim his statutory responsibilities under the NVRA. He offers two flawed arguments to attack the Court's subject matter jurisdiction. First, Defendant Ashcroft contends that the NVRA merely requires him to "confer" and "coordinat[e]" with the state's motor vehicle agency—the Department of Revenue ("DOR")—regarding voter registration activities, but that the NVRA gives him no power or responsibility to enforce compliance. (Dkt. No. 28 at 4.) As a result, he claims that Plaintiffs' injuries are not traceable to his actions or inactions. Second, Defendant Ashcroft argues that because the Court can allegedly fully redress Plaintiffs' injuries without his presence as a defendant, the redressability prong of standing is not met. These arguments are not legally or factually correct.

Federal law, relevant case law, and other supporting authorities all establish that Defendant Ashcroft is responsible for ensuring the State's NVRA responsibilities are met. The NVRA requires that, as the State's chief election official, Defendant Ashcroft be notified of— and given time to correct—any violations of that law before litigation can be commenced. *See* 52 U.S.C. § 20510. Defendant Ashcroft has not disputed this point. Moreover, *all* legal precedent addressing the issue has held that the NVRA creates enforcement responsibilities for each state's chief election official, regardless of the state government's internal structure. Because Plaintiffs

1

have sufficiently alleged that Defendant Ashcroft failed to take steps to ensure Missouri's NVRA compliance, they have sufficiently traced their injuries to his conduct, or lack thereof.

Further, Defendant Ashcroft is a necessary party if the NVRA violations identified in Plaintiffs' Amended Complaint ("Complaint") are to be fully addressed. For example, correcting the NVRA violations alleged in the Complaint would require Defendant Ashcroft to work with DOR to (1) identify Missourians who are not registered at the address on file with DOR and ensure that those who had not been provided with voter registration services are given the opportunity to become registered at their current address, and (2) ensure that voter registration information is effectively transmitted to, and processed by, elections officials. Further, Defendant Ashcroft is the sole party to this case who would be able to develop procedures and direct boards of elections on how provisional ballots cast by Missourians affected by the violations alleged herein are counted.

Because Plaintiffs' injuries are fairly traceable to Defendant Ashcroft's conduct and would be redressed by a court order requiring him to work with DOR to bring the State into compliance, Plaintiffs have standing to sue him. The motion to dismiss should be denied.

**ARGUMENT**

To establish standing under Article III of the U.S. Constitution, "a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the injury." *Iowa League of Cities v. Environmental Protection Agency*, 711 F.3d 844, 869 (8th Cir. 2013) (citations omitted).[1] Here, Defendant Ashcroft asserts that Plaintiffs have not shown the last two

---

[1] Defendant Ashcroft's argument that Plaintiffs lack standing to sue him is a facial—not a factual—attack on jurisdiction. *See, e.g.*, *Davis v. Anthony*, 886 F.3d 674, 679 (8th Cir. 2018) (discussing the differences between a facial and factual attack). In facial jurisdictional challenges, "all of the factual allegations concerning jurisdiction are

2

elements of standing—that their injuries are fairly traceable to his conduct and would likely be redressed by a favorable decision—because the he is not responsible for the State's NVRA violations.[2] (Dkt. No. 28 at 4-6.) Defendant Ashcroft is wrong. As a matter of law, Defendant Ashcroft has both the authority and obligation to coordinate Missouri's NVRA responsibilities, and Plaintiffs have Article III standing.

### A. Plaintiffs Injuries Are Fairly Traceable to Defendant Ashcroft's Conduct Because, as Missouri's Chief Election Official, His Coordination Duties Include Ensuring Compliance with Missouri's Responsibilities Under the NVRA.

#### 1. Defendant Ashcroft's Underlying Arguments that He Cannot Be Held Responsible for Missouri's Section 5 Violations Fail as a Matter of Law.

Section 5 of the NVRA, 52 U.S.C. § 20504, requires that each application for a driver or nondriver license[3] (including any renewal application) submitted to the State motor vehicle authority shall "serve as" an application to register to vote. *See id*. § 20504(a)(1); *see also id.* §§ 20504(c)(2)(a) & (e). It further requires that whenever a person updates the address associated with their license—whether in person or via a remote transaction such as mail or Internet—the State must update the person's voter registration address as well, unless the person affirmatively requests that their registration information not be updated. *See id*. § 20504(d); *Action NC v. Strach*, 216 F. Supp. 3d 597, 623 (M.D.N.C. 2016) ("[M]andates in Section 5(a) or (d) that 'each' application and 'any' change of address be accompanied by voter registration services . . . apply equally to in-person and remote covered transactions."). Section 5's provisions are central to the NVRA because they facilitate voter registration and the maintenance of up-to-date voter

---

presumed to be true" and a defendant's motion succeeds only "if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted).

[2] Defendant Ashcroft does not argue that Plaintiffs have not met the injury-in-fact requirement for Article III standing.

[3] For purposes of this brief, "license" refers to both driver and nondriver licenses.
3

rolls while placing little burden on the voter. *See* 52 U.S.C. § 20501 (describing the purposes of the NVRA).

Section 10 of the NVRA, *id.* § 20509, requires each state to designate a chief State election official to coordinate the State's NVRA responsibilities, including its responsibilities under Section 5. Missouri has designated the Secretary of State as its "chief state election official responsible for the coordination of state responsibilities under the [NVRA.]" Mo. Rev. Stat. § 115.136.1. The authority granted to the Secretary of State under Missouri law is co-extensive with Section 10 of the NVRA. *Compare id. with* 52 U.S.C. § 20509; *cf. Scott v. Schedler*, 771 F.3d 831, 838 (5th Cir. 2014) (concluding Louisiana's NVRA-implementing statute gives its chief election official "authority that is co-extensive with the NVRA").

Here, Defendant Ashcroft admits he is the designated "chief state election official responsible for the *coordination of state responsibilities* under the [NVRA]." (Dkt. No. 28 at 4 (citing 52 U.S.C. § 20509; Mo. Rev. Stat. § 115.136.1).) He argues, however, that the NVRA's "coordination" requirement "is not equivalent to ensuring compliance." (*Id.* at 5.) Instead, Defendant Ashcroft argues that Missouri law merely requires that he be available to "confer" with DOR as to adoption of "rules and regulations pertaining to the format of the voter registration application used by [DOR]." (*See id.* at 4 (citing Mo. Rev. Stat. § 115.160(3)).) Further, he argues that Section 5 compliance is "exclusively delegated to [DOR] by the NVRA and by Missouri statutes," and that he has "no legal authority beyond coordinating and conferring" with DOR. (*Id.* at 5.)

All of these arguments are meritless attempts by Defendant Ashcroft to shirk his NVRA responsibilities and pass the buck to DOR. The NVRA's plain text and structure, as well as its legislative history, make it clear that, as the designated chief State election official, Defendant

4

Ashcroft is responsible for remedying Missouri's NVRA violations. As set forth below, federal courts have repeatedly rejected the exact arguments posed by Defendant Ashcroft, and this Court should too.

First, under the plain language of Section 10, as Missouri's designated chief election official, Defendant Ashcroft is "*responsible* for coordination of *the State responsibilities under [the NVRA.*]" 52 U.S.C. § 20509 (emphases added); *see also* Mo. Rev. Stat. § 115.136.1 (using the same). The text thus places a duty squarely on Defendant Ashcroft to guarantee that "State responsibilities under [the NVRA]"—or State compliance with the NVRA, including Section 5—are met.

Defendant's semantic argument that he cannot be held responsible for State NVRA violations because his "coordinating" responsibilities are distinct from responsibility for "ensuring" compliance has been firmly rejected by the Eighth Circuit. In *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008), the Eighth Circuit found that the Missouri Secretary of State is responsible for enforcing and implementing the NVRA and can be sued for non-compliance. While recognizing that the Secretary of State may not have direct power to "enforce" the NVRA *per se* when local election authorities ("LEAs") violated the law, the court noted that this did not absolve the Secretary of State of responsibility for implementing the NVRA. The court noted that the Secretary had other means at her disposal to ensure compliance with the NVRA, including developing "different or improved methods for *encouraging* LEA compliance." *Id.* at 851. Moreover, the court held that the State of Missouri, *including* the Secretary of State in her capacity as the designated chief State election official, has certain obligations under the NVRA that cannot be delegated to LEAs. *Id.* at 846 & n.1, 849-51 (citing 52 U.S.C. § 20509; Mo. Rev. Stat. § 115.136.1). Far from concluding that it lacked subject

5

matter jurisdiction over the Secretary of State, the Eighth Circuit reversed the lower court's order granting summary judgment to the Secretary and remanded. *Id.* at 848, 853. Thus, the assertion that this Court lacks subject matter jurisdiction over the Secretary simply cannot be squared with Eighth Circuit precedent allowing an NVRA claim against the Missouri Secretary of State to stand.

Other federal courts have similarly rejected the argument advanced by Defendant Ashcroft when interpreting Section 10's plain text. In *Harkless v. Brunner*, 545 F.3d 445, 451-52 (6th Cir. 2008), the Sixth Circuit rejected the very same argument advanced by Ohio's Secretary of State about the meaning of "coordinate" in the NVRA. The court explained that "coordinate" must be read in conjunction with the language in Section 10 that places the chief election official in charge of "state responsibilities" under the Act. *Id.* at 454. It noted that coordination also means implementation, making the "Secretary . . . responsible for managing the multiple state responsibilities under the NVRA." *Id.*

Similarly, in *Vladez v. Herrera*, No. 09-CV-00668 JCH/DJS, 2010 WL 11465061 (D.N.M. Dec. 21, 2010), the court reasoned that regardless of any technical difference between a duty to "coordinate" and to "ensure" NVRA compliance, the designated chief election official "bears at least some responsibility for the state's compliance" with the NVRA's voter registration requirements.[4] *Id.* at *9. Because the defendant failed to demonstrate that she had

---

[4] Both the *Harkless* and *Vladez* courts are clear that, regardless of differences in state law, a designated chief State election official is responsible for State NVRA violations pursuant to Section 10. *See Harkless*, 545 F.3d at 451 (noting that "[t]o determine whether the Secretary may be held responsible for Ohio's NVRA violations, we need not look further than the text of the [NVRA]"); *Vladez*, 2010 WL 11465061, at *10 (explaining that "[t]he concept that the chief election official has the ability and responsibility to ensure compliance with Section 7 is . . . contained in the NVRA").

6

fulfilled these responsibilities as a matter of law, the court denied her motion for summary judgment. *Id.* at *10.[5]

The Fifth Circuit, in *Scott v. Schedler*, agreed with these earlier opinions, noting that "although *Missouri* expresses itself in different language from *Harkless*, both the Eighth Circuit's and the Sixth Circuit's interpretations of the NVRA provide the chief election official with authority to enforce the NVRA with respect to state agencies." 771 F.3d at 838. Relying on these two opinions, the Court held that "'coordination' includes enforcement power." *Id.* at 839; *see also N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*, No. 16-CV-01274, 2016 WL 6581284, at *4 (M.D.N.C. Nov. 4, 2016) (noting that "the NVRA directs every state to identify a chief election officer to *ensure the state complies with the NVRA*") (emphasis added).

Second, in addition to Section 10's plain language assigning responsibility and the clear case law, the NVRA's legislative history and its structure as a whole confirm that the designated chief election official is responsible for State NVRA violations. The legislative history notes that a state's chief election official is "responsible for implementing the state's functions under the [NVRA]." S. Rep. No. 103-6, at 39 (1993). Moreover, the NVRA provides that, before an enforcement action may be filed, the State's designated official must be provided with pre-litigation notice of ongoing violations. 52 U.S.C. § 20510(b)(1).[6] As the Sixth Circuit concluded in *Harkless*, a pre-litigation notice requirement to a designated official would "hardly make sense if that official did not have the authority to remedy NVRA violations." 545 F.3d. at 452-53 (citations omitted). The Fifth Circuit adopted this rationale in *Scott*, adding that "the NVRA's

---

[5] Like the defendant in *Vladez*, Defendant Ashcroft admits some responsibilities as the designated chief state election official, belying his argument that DOR is "exclusively" responsible for Section 5 compliance and thus the only proper party to this suit. (*See* Dkt. No. 28 at 5-6; *Vladez*, 2010 WL 11465061, at *10.) Yet, unlike the defendant in *Vladez*, Defendant Ashcroft has put forward no evidence whatsoever that he has fulfilled these "admitted responsibilities" as a matter of law. *See Vladez*, 2010 WL 11465061, at *10.

[6] The only time that such notice is not necessary is when a violation occurs within 30 days of a federal election. 52 U.S.C. § 20510(b)(2)-(3).

7

centralization of compliance responsibility also suggests that the chief elections officer has enforcement power[,]" and concluding that this officer "is the state's stand-in." 771 F.3d at 839.

Finally, Defendant Ashcroft implies that Missouri law is somehow different from the NVRA and requires him only to "confer" with DOR. (Dkt. No. 28 at 4.) But this is incorrect— Missouri law is co-extensive with the NVRA, and therefore, Defendant Ashcroft has the same responsibility for NVRA compliance under state law as he does as the designated chief State election official under the NVRA. But even if the Missouri law purported to impose lesser responsibilities on the Secretary as the designated chief State election official, Defendant Ashcroft would still have to comply with the NVRA. Under the principle that state laws conflicting with federal laws are preempted, any inconsistency between Missouri state law and the NVRA, is resolved in the favor of the NVRA. *See, e.g.*, *Arizona v. Inter Tribal Counsel of Arizona, Inc.*, 570 U.S. 1, 8-9, 14-15 (2013); *Int'l Paper Co. v. Ouellette, et al.*, 479 U.S. 481, 491-92 (1987); *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

In sum, consistent with the NVRA's plain text, structure, and legislative history, as well as case law within and outside the Eighth Circuit, Defendant Ashcroft bears responsibility for ensuring Missouri's Section 5 obligations are met and certainly is amenable to suit for NVRA violations. *Missouri*, 535 F.3d at 850-51; *Vladez*, 2010 WL 11465061, at *9 (noting that the chief State election official "bears at least some responsibility" for NVRA compliance).

### 2. The Complaint Demonstrates a Clear Causal Connection Between Plaintiffs' Injuries and Defendant Ashcroft's Failure to Meet His Obligations as the Chief State Election Official.

To establish causation for standing purposes, a litigant must show that the injury asserted is "fairly traceable to the challenged action of the defendant." *See Iowa League of Cities*, 711 F.3d at 870 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009)). Defendant Ashcroft does not contend that Missouri's NVRA violations have not injured

8

Plaintiffs. Rather, he argues that Plaintiffs injuries are attributable only to DOR's failure to comply with Section 5, which he describes as an area "exclusively delegated to [DOR] by the NVRA and by Missouri statutes." (*See* Dkt. No. 28 at 5.) As discussed, Defendant Ashcroft's underlying argument that the designated chief election official of Missouri cannot be held responsible for Section 5 violations is foreclosed by precedent and fails as a matter of law. Looking to the Complaint, Plaintiffs have sufficiently pled a causal connection between their injuries and Defendant Ashcroft's failure to meet his obligations as the chief State election official.

Plaintiffs have alleged substantial, ongoing injuries: having to divert their limited organizational resources to help close the registration gap caused by Missouri's failure to comply with Section 5 and, in the case of the League of Women Voters of Missouri, individual members who have been and will continue to be harmed as a result of Defendants' refusal to provide required voter registration services. The Complaint sufficiently alleges that these injuries are caused by *both* Defendants' noncompliance. (*E.g.*, Dkt. No. 19 ("Am. Compl.") ¶¶ 3, 6, 22, 34-35, 40-41, 46-48, 54, 72-76.)

Plaintiffs repeatedly alerted Defendant Ashcroft to ongoing Section 5 violations under the pre-litigation notice requirements laid out in 52 U.S.C. § 20510(b). (*Id*. ¶¶ 69-70.) The Complaint also makes clear that Defendant Ashcroft in particular is causing Plaintiffs' injuries by failing "to coordinate and/or ensure DOR's compliance" with Section 5, "by, without limitation, allowing DOR to continue to use in-person, mail, and online processes that violate the NVRA." (*Id*. ¶¶ 74, 50 (citing 52 U.S.C. § 20509 & Mo. Rev. Stat. § 115.136.1).) Yet Defendant Ashcroft does not even assert that he attempted to address the identified violations in any way—

much less coordinate the State's NVRA responsibilities or find an alternative method of ensuring that Missouri "implement" Section 5's requirements. *See Harkless*, 545 F.3d at 450.

As Plaintiffs have sufficiently alleged that their injuries are traceable to Defendant Ashcroft's failure to fulfill his obligations as Missouri's chief State election official with respect to the alleged NVRA Section 5 violations, Defendant's causation argument fails.

### B. Plaintiffs' Injuries Cannot Be Fully Redressed If Defendant Ashcroft Is Not a Party to the Suit.

The final requirement for Article III standing is that a litigant must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Iowa League of Cities*, 711 F.3d at 870 (internal quotation marks & citations omitted). Here, Defendant Ashcroft asserts that because he "has no legal authority beyond coordinating and conferring, Plaintiffs cannot show that any favorable decision for the Plaintiffs against [him] would redress their injuries in any way." (Dkt. No. 28 at 5.) Once again, this argument relies on Defendant Ashcroft's meritless argument that he cannot be held responsible for DOR's noncompliance with Section 5. *See supra* Section A. The law is clear: litigants enforcing the NVRA *can* seek recourse against designated chief State election officials—including the Missouri Secretary of State—as Plaintiffs do. And here, on the facts, Plaintiffs' injuries cannot be fully redressed without a decision against Defendant Ashcroft.

The Eighth Circuit's decision in *United States v. Missouri* establishes that the Missouri Secretary of State has the power to redress NVRA violations. After concluding that the defendants in that case—*including* the Secretary of State, as Missouri's designated chief election official—has certain obligations under the NVRA, the Eighth Circuit noted the availability of potential remedies against the defendants "besides ordering Missouri to enforce the NVRA

10

against the LEAs," such as ordering Missouri to "develop different or improved methods for *encouraging* LEA compliance." 535 F.3d at 851.

Similarly, here Plaintiffs' injuries are likely to be redressed by an order granting declarative and injunctive relief requiring, among other things, that Defendant Ashcroft promptly comply with the NVRA by "coordinat[ing]" the State's Section 5 responsibilities and "conferring" with DOR as to how to address the ongoing violations. *See* 52 U.S.C. § 20509; Mo. Rev. Stat. § 115.160(3). Defendant Ashcroft does not suggest that such a remedy is unavailable and, even if he were to allege that DOR would refuse to "confer" with him as required under Mo. Rev. Stat. § 115.160(3), such an allegation would be legally insufficient to demonstrate the Secretary of State's inability to redress the NVRA violations.

Plaintiffs have specified the relief they seek from Defendant Ashcroft. Plaintiffs seek relief declaring that Defendant Ashcroft is violating the NVRA by, without limitation, allowing DOR to continue to use in-person, mail, and online processes that violate the NVRA and requiring both Defendants and their officers and agents to promptly and fully correct their violations. (*E.g.*, Am. Compl. ¶¶ 7, 24, 49-50, 74-77.) Contrary to Defendant Ashcroft's assertion that complete relief can be afforded in his absence (Dkt. No. 28 at 5-6), Plaintiffs have requested relief that DOR could not implement on its own.

For example, Defendant Ashcroft is not only tasked with ensuring that Missouri meets its NVRA obligations under federal and state law, he is also the sole Defendant with the ability to ensure that local elections officials properly process registration materials sent by DOR. With respect to the failure of Defendants to offer voter registration services during online and certain mail transactions, Defendant Ashcroft's coordination is essential in figuring out any technology adjustments that may be needed to help transfer information from DOR's online change-of-

11

address system to the Secretary's office and/or local election officials, as well as developing a process for processing voter registration updates received during mail transactions. *See generally* Mo. Rev. Stat § 115.158 (setting forth the Secretary of State's duty to administer and maintain the Missouri Voter Registration System—a centralized, interactive voter registration database).

Additionally, Plaintiffs have requested relief requiring Defendants:

> to take all actions necessary to remedy the past and continuing violations of Section 5, including, without limitation, ensuring that all persons affected by Defendants' violations are provided opportunities to register to vote or to change their voter registration addresses to enable them to vote in the next federal election cycle, or opt-out if desired.[7]

(Am. Compl. at 18, ¶ iii.) Remedying past violations will require the State to devise a process to identify and count the provisional ballots of DOR clients who used the mail or online address-update system yet are denied a regular ballot because they are not registered to vote at their current address. *See, e.g.*, *Action NC*, 216 F. Supp. 3d at 648 (ordering that North Carolina count the provisional ballots of voters who did not appear on the voter rolls or did not have their addresses updated as a result of the state motor vehicle agency's failure to provide the voter registration services required by the NVRA). Devising such a process and ensuring that local boards of elections are informed of and properly implementing said process requires the involvement of Defendant Ashcroft.

Defendant Ashcroft's Motion to Dismiss on redressability grounds must therefore also be denied.

## CONCLUSION

Plaintiffs have sufficiently alleged Article III standing to bring this Section 5 suit against Defendant Ashcroft. Defendant's Motion to Dismiss is nothing more than an attempt to shirk his

12

clear responsibilities under the NVRA as the State's designated chief election official. For the foregoing reasons, Defendant Ashcroft's Motion to Dismiss must be denied.

Respectfully Submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
Telephone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU OF MISSOURI FOUNDATION
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Telephone: (816) 470-9938
gwilcox@aclu-mo.org

Denise D. Lieberman, #47013
Sabrina Khan*
ADVANCEMENT PROJECT
1220 L Street NW, Suite 850
Washington, DC 20005
Telephone: (314) 780-1833
Fax: (202) 728-9557
dlieberman@advancementproject.org
skhan@advancementproject.org

Naila S. Awan*
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: (212) 485-6065
nawan@demos.org

---

[7] Plaintiffs also request that Defendants be ordered to "develop, implement, and enforce practices and policies to ensure compliance with Section 5[.]" (Am. Compl. at 18, ¶ ii.) At a bare minimum, DOR cannot implement such relief without "conferring" with the Secretary of State pursuant to Mo. Rev. Stat. § 115.160(3).

13

Allie Boldt* **
Chiraag Bains (MA Bar No. 673627)* **
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746
aboldt@demos.org
cbains@demos.org

Sarah Brannon* **
Davin M. Rosborough* **
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Telephone: (202) 675-2337
sbrannon@aclu.org
drosborough@aclu.org

Joshua B. Picker*
Saad Rizwan*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Fax: (212) 841-1010
jpicker@cov.com
srizwan@cov.com

*Attorneys for Plaintiffs*

* Admitted *pro hac vice*
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

## CERTIFICATE OF SERVICE

I certify that on June 1, 2018, I filed the foregoing Suggestions in Opposition to Defendant Ashcroft's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, and a copy was made available to all electronic filing participants.

/s/ Anthony E. Rothert