IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LEAGUE OF WOMEN VOTERS OF )
MISSOURI, et al., )
                             Plaintiffs, )
v. )  Case No. 2:18-CV-04073-BCW
JOHN R. ASHCROFT, )
in his official capacity as Missouri )
Secretary of State, et al., )
                             Defendants. )

## ORDER

Before the Court is Plaintiff's Motion for a Preliminary Injunction (Doc. #31). The Court, being duly advised of the premises, grants in part and denies in part said motion.

## BACKGROUND

On April 17, 2018, Plaintiffs League of Women Voters of Missouri, St. Louis A. Philip Randolph Institute, Greater Kansas City A. Philip Randolph Institute (collectively, "Plaintiffs") filed claims against Defendants John R. Ashcroft, in his official capacity as Missouri Secretary of State, and Joel W. Walters, in his official capacity as Director of the Missouri Department of Revenue ("Defendants"), alleging violation of the National Voter Registration Act, 52 U.S.C. § 20501, et seq. ("NVRA").

Plaintiffs are organizations engaged in voter registration activities in Missouri. Ashcroft, as Missouri Secretary of State, is the designated chief state election official for purposes of the NVRA. Mo. Rev. Stat. § 115.136. Walters, as the Missouri Director of the Department of Revenue, oversees the Driver License Bureau.

1

The Driver License Bureau, a division of the Department of Revenue (hereinafter, "the Department"), administers driver's licenses and nondriver's identification cards[1] in Missouri pursuant to state law. To obtain a Missouri driver's license, an applicant must be a Missouri resident, and provide documentary verification of Missouri residency. Mo. Rev. Stat. § 302.171. Once the license application is approved, this verified residential address is printed on the physical license card itself, and is also encoded on the back of the license card. 12 C.S.R. 10-24.430.

The Department also requires a license holder to provide, in addition to a residential address, a mailing address. The mailing address does not appear on the license card itself. Rather, the license holder's mailing address is used for the Department to communicate with the license holder. The license holder's residential address and mailing address, as well as other identifying information associated with the license holder, are separately entered and stored by the Department in the Missouri Driver's License Information Database ("MODL").

Missouri license holders may change their address information. The appropriate procedure for changing address information varies based on whether the license holder wishes to change the residential address or the mailing address associated with his or her license.

Under the Department's current procedure, license holders can make changes to their residential addresses in person only. A change of residential address requires documentary verification. If a license holder makes a change to their residential address, they may, but are not required to, pay a fee for the Department to print a new license card reflecting the updated residential address. If a license holder elects to avoid this fee, a change in residential address will

---

[1] A nondriver's license is a state-issued ID card. It contains the same information included on a driver's license, but does not confer driving privileges. Mo. Rev. Stat. § 302.181. For purposes of this order, the Court refers to driver's licenses to categorically include both driver's and nondriver's licenses.

2

be changed in MODL only. Any change to a license holder's residential address need not impact the mailing address associated with the license and stored in MODL.

Likewise, a change in mailing address need not impact the residential address associated with a license and stored in MODL. License holders may also change the mailing address through which the Department communicates license-related information. A change of mailing address does not require documentary verification.

Under the scenarios described above, in which a license holder goes into a license office, the Department offers voter registration services in connection with a change of residential address and/or change of mailing address.

By contrast, the Department's current procedures allow license holders to change the mailing address associated with their licenses, in person, online, or by mail. If a license holder updates their mailing address in person at a license office, the Department offers them voter registration services in connection with that mailing address change. However, if a license holder updates their mailing address online or by mail, the Department does not offer voter registration services.

Plaintiffs assert that Missouri's current processes for change-of-mailing-address-online and change-of-mailing-address-by-mail violate Section 5(d) of the NVRA because Defendants do not provide voter registration services in connection with these change-of-mailing-address transactions ("Subject Transactions"). Plaintiffs seek entry of a preliminary injunction against this alleged violation of the NVRA before the November 6, 2018 federal election. Defendants dispute the Department's current processes for the Subject Transactions violate the NVRA.

3

On August 8, 2018, the Court held a hearing on Plaintiffs' motion. Having considered the record and the parties' arguments during the hearing, the Court finds Plaintiffs have demonstrated a right to preliminary injunctive relief.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy," and the burden of establishing the propriety of a preliminary injunction is on the moving party. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). In determining whether to issue a preliminary injunction, the district court must consider the following factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties to the litigation; and (4) the public interest. Rogers Grp., Inc. v. City of Fayetteville, Ark., 629 F.3d 784, 787 (8th Cir. 2010) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)). Likelihood of success on the merits is the "most significant" factor, and "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013). "The party seeking injunctive relief bears the burden of proving all the Dataphase factors." Watkins, 346 F.3d at 844.

## ANALYSIS

Plaintiffs argue this Court should enter preliminary injunctive relief against Defendants because Plaintiffs have demonstrated a likelihood of success on the merits relative to their claim that Defendants' failure to offer voter registration services in connection with the Subject Transactions violates the NVRA. Plaintiffs further assert that the other Dataphase factors also weigh in favor of preliminary injunctive relief.

Defendants oppose Plaintiffs' assertions, arguing the NVRA requires voter registration services in association with residential address changes only. Defendants also argue Plaintiffs have not shown irreparable harm, and the balance of the harms weighs against preliminary injunction. Finally, Defendants argue a preliminary injunction is not in the public interest.

**B. P**LAINTIFFS **D**EMONSTRATE A **L**IKELIHOOD OF **S**UCCESS ON THE **M**ERITS**.**

Plaintiffs assert a likelihood of success on the merits that Defendants' current processes for the Subject Transactions violate Section 5(d) of the NVRA. Defendants assert Plaintiffs have not established an NVRA violation because Section 5(d) requires voter registration services "for purposes of a State motor vehicle driver's license." Whether Plaintiffs have demonstrated a likelihood of success on the merits is a question of statutory interpretation.

Section 5(d) of the NVRA provides:

> Any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes.

52 U.S.C. § 20504(d).

Analysis of statutory interpretation "begins with the plain language of statute." Jimenez v. Quarterman, 555 U.S. 113, 118 (2009). If its language is plain, the statute must be enforced according to its terms. Id.

Under the plain language of Section 5(d), voter registration should be provided in connection with "[a]ny change of address form." 52 U.S.C. § 20504(d). "Any" "naturally . . . has an expansive meaning . . . ." United States v. Gonzales, 520 U.S. 1, 5 (1997). Without language restricting its application, "the word 'any' must be given its ordinary meaning." Action NC v. Strach, 216 F. Supp. 3d 597, 622 (M.D.N.C. 2016). Thus, the use of the word "any" means that

Section 5(d) "encompass[es] all address changes without regard to where or how they occur." Id.; Stringer v. Pablos, Civil No. CV SA-16-CA-257-OG, 2018 WL 2193034, at *18 (W.D. Tex. May 10, 2018) ("the plain language of the NVRA indicates that it applies to all transactions").

Defendants assert "any" is modified by the phrase "for purposes of a State motor vehicle driver's license," upon which a license holder's residential address is printed, such that Section 5(d) requires voter registration services only in connection with changes of residential address, which the Department does provide. This argument is rooted in the NVRA definition of a "motor vehicle driver's license" to include "any personal identification document issued by a State motor vehicle authority," and Defendants reliance on the word "document." 52 U.S.C. § 20502(3).

This argument is undermined by the language in other NVRA provisions. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Mich. Dep't of Treas., 489 U.S. 803, 809 (1989). For example, § 20507, pertaining to "Requirements with respect to administration of voter registration," distinguishes between "change-of-address information supplied by the Postal Service," and a registrant's residence address. 52 U.S.C. § 20507(c)(1). If Congress intended to limit Section 5(d) only to residential address changes, that limiting language would appear in the statute. Instead, Section 5(d) refers to any change of address, which is more akin to the more broadly referenced "change-of-address information." Ratzlaf v. United States, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."); Russello v. United States, 464 U.S. 16, 23 (1983).

Defendants also argue Section 5(d) does not cover the Subject Transactions because the Subject Transactions only relate to changes in mailing address, which does not appear on the face of the driver's license card. The Department collects two separate addresses from every driver's

license holder. It is a "cardinal principle of statutory construction" to "give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000). The Subject Transactions, though for changes of mailing address, are "for purposes of" "any personal identification document issued by a State motor vehicle authority" because a license holder's mailing address is used by the Department for communications with the license holder in association with the license. 52 U.S.C.§ 20502(3). Defendants' argument that Section 5(d) applies only to address changes appearing on the face of the license card itself is unavailing.

Finally, the Subject Transactions fall under the phrase "submitted in accordance with State law." This phrase follows "[a]ny change of address form," meaning that the individual changing his or her address must do so in compliance with State law. Barnhart v. Thomas, 540 U.S. 20, 21 (2003) (limiting phrase modifies the noun or phrase it immediately follows). Moreover, the NVRA sets forth the voter registration services requirements; states may not determine with which change of address transactions they must offer registration services and which ones they may not. Arizona v. Inter Tribal Council of Ariz., Inc., 570 U.S. 1, 14 (2013) (Elections Clause of the U.S. Constitution supersedes state regulations to the extent a conflict exists.).

These findings are consistent with the NVRA's enumerated purposes[2] of increasing the number of eligible citizens and protecting the integrity of the electoral process. Ga. State Conference of NAACP v. Kemp, 841 F. Supp. 2d 1320, 1323 (N.D. Ga. 2012) (citing 42 U.S.C. § 1973gg(b)(1), (3). "It is evident that Congress' concern was to provide citizens eligible to register

---

[2] The NVRA has four enumerated purposes, as follows: (1) to establish procedures to increase the number of eligible citizens who are registered to vote in Federal elections; (2) to establish a procedure for Federal, State, and local governments to implement the NVRA in a manner that promotes the participation of voters in Federal elections; (3) to protect the integrity of the electoral process; and (4) to ensure the maintenance of accurate and current voter registration rolls. 52 U.S.C. § 20501.

to vote with opportunities to register by utilizing state offices with which they were likely to have contact." Id. at 1332.

For all of these reasons, Plaintiffs have established a likelihood of success on the merits of their claim that Defendants' processes for the Subject Transactions violate Section 5(d) of the NVRA. This factor weighs in Plaintiffs' favor.

### B. PLAINTIFFS DEMONSTRATE THREAT OF IRREPARABLE HARM.

Plaintiffs argue irreparable harm through the divestment of association resources and through member disenfranchisement.

Courts routinely recognize that organizations suffer irreparable harm when a defendant's conduct causes them to lose opportunities to conduct election-related activities, such as voter registration and education. Ind. State Conference of the NAACP v. Lawson, Case No. 1:17-cv-02897-TWP-MPB, 2018 WL 2752564, at *12 (S.D. Ind. June 8, 2018) (agreeing that conduct that interferes with an organization's voter registration efforts by forcing it to divert resources constitutes irreparable harm); Action NC, 216 F. Supp. 3d at 642–43 (finding irreparable harm where "Plaintiffs continue to divert resources to voter registration, sacrificing other voter mobilization and voter education efforts"); Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1350 (N.D. Ga. 2016) ("conduct that limits an organization's ability to conduct voter registration activities constitutes an irreparable injury"); N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections, No. 16-cv-1274, 2016 WL 6581284, at *9 (M.D.N.C. Nov. 4, 2016) (finding irreparable harm when NAACP "had to divert its finite and limited resources away from its planned voter-protection and education efforts"); League of Women Voters of Fla. v. Browning, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) (holding that the plaintiffs' lost opportunity to register voters is irreparable harm); cf. Greater Birmingham Ministries v. Alabama, 161 F. Supp. 3d 1104, 1117

(N.D. Ala. 2016) (finding diversion of resources equates to loss of money and time, which is not generally irreparable harm).

Plaintiffs are non-profit organizations that encourage participation in government through voter registration activities, mobilization, education, and engagement efforts. Plaintiffs allege they have diverted resources from other activities crucial to their missions in order to address Defendants' failure to offer voter registration services in connection with mail-in and online change of address transactions. Metro. St. Louis Equal Hous. Opportunity Council v. Lighthouse Lodge, LLC, No. 2:09-CV-04018-NKL, 2009 WL 1576735, at *3 (W.D. Mo. June 4, 2009). In the Court's view, monetary relief cannot remedy these injuries. Thus, Plaintiffs have shown irreparable harm.

Moreover, the League has suffered irreparable harm through individual members who, in updating his or her mailing address online, must separately update his or her voting registration. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). If "constitutional rights are threatened or impaired, irreparable injury is presumed." Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012). "[T]he right to vote is a constitutionally protected fundamental right," Fish v. Kobach, 840 F.3d 710, 752 (10th Cir. 2016). As such, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." League of Women Voters of N. Carolina, 769 F.3d at 247. This factor weighs in favor of preliminary injunction.

**C. THE BALANCE OF THE EQUITIES WEIGHS IN PLAINTIFFS' FAVOR.**

Plaintiffs argue that if compliance with federal law can be considered a harm at all, any burden on Defendants associated with preliminary injunctive relief is outweighed with the harm to Plaintiffs if an injunction does not issue. Defendants assert there is no NVRA violation to cure,

9

and Plaintiffs' proposed injunction would impose a significant financial burden on Defendants, totaling at least $474,221.00.

Plaintiffs have requested preliminary relief that would require Defendants to: (a) alter the policies for counting certain provisional ballots, (b) create and disseminate posters to LEAs discussing the provisional ballot counting process, (c) send a mailing to affected DOR customers, and (d) make updates to the online and mail change-of-address forms.

The Court must weigh the burdens Defendants face against the harm that will result if the Court does not implement the requested relief. In light of the conclusions above, the Plaintiffs face continuing irreparable harm in the form of divested resources, and the voters they assist face continuing irreparable harm in the form of disenfranchisement. These significant burdens on Plaintiffs in the absence of injunctive relief outweigh any financial burden on Defendants, even assuming Defendants' cost estimate relating for the full scope of relief is accurate.

Plaintiffs have also presented evidence that approximately 200,000 Missourians move between counties (and thus to new election jurisdictions) within the State every year, and the Defendants have demonstrated that approximately 40,000 Missourians have used the forms at issue here to update their license records since the November 2016 General Election. Because a court may examine "the harm to all parties involved in the dispute and other interested parties, including the public," this Court considers the harm those individuals will experience—denial of federally required voter registration opportunities and possible disenfranchisement—in the absence of relief preliminary relief. Borsheim Builders Supply, Inc. v. Harstad-Cook, Case No. 4:14-cv-083, 2014 WL 12543857, at *6 (D.N.D. Oct. 3, 2014); Reg Seneca, LLC v. Harden, 938 F. Supp. 2d 852, 861 (S.D. Iowa 2013)

The burden Defendants face implementing the proposed relief amounts to a relatively small amount of money and staff time. Given the harm to Plaintiffs and Missourians at large from the current state of affairs, the Court finds the need for relief amply supported. This factor weighs in favor of Plaintiffs.

**D. THE PUBLIC INTEREST WEIGHS IN PLAINTIFF'S FAVOR.**

Plaintiffs argue the public interest favors preliminary injunctive relief because they are likely to succeed on the merits that Defendants are violating the NVRA, and the public has an interest in ensuring federal laws are followed, particularly when those interests relate to voting rights. Plaintiffs also argue a preliminary injunction will reduce the number of eligible Missouri voters disenfranchised by Defendants' NVRA violation, and will maximize the number of qualified voters, as well as serve the NVRA's enumerated purposes.

Defendants rely on their arguments that its current processes do not violate the NVRA, a contention with which this Court disagrees, and the possibility that the terms of the injunction requested by Plaintiffs might confuse voters on Election Day.

There is no dispute among the parties that "ensuring qualified voters exercise their right to vote is always in the public interest." Action NC, 216 F. Supp. 3d at 648. While the Court is cognizant of the extreme nature of preliminary injunctive relief, the circumstances of this case suggest the public's interests in the right to vote, and ensuring that state processes follow federal law, outweigh the public costs for Defendants to comply with a preliminary injunction.

Even so, Plaintiffs' proposed injunction must be considered in the context of practicality and time constraints presented by the approaching November 6, 2018 Election Day and October 10, 2018 voter registration cut-off date. Even if the Court agreed with Plaintiffs that all aspects of

its proposed preliminary injunction were warranted, it would be unreasonable to expect Defendants to do all of the things Plaintiffs want before the registration cut-off. Accordingly, it is hereby

ORDERED Plaintiffs' Motion for Preliminary Injunction (Doc #31) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED Defendants shall immediately address the continuing NVRA violation resulting from Defendants' current processes for the Subject Transactions by reverting to the change of mailing address procedures in use before August 1, 2017. It is the Court's intent that both the online request for change of mail-to address and mail-in form for change of mail-to address include a link and/or notification to users that additional steps are necessary to make changes to an address associated with voter registration. This temporary measure is intended as a stop-gap only; the Court will determine whether the processes in place before August 1, 2017 also violate the NVRA in the context of considering the merits of permanent relief. It is further

ORDERED Defendants shall immediately send a mailing to all individuals whose current Department records reflect that they used the processes for the Subject Transactions between August 1, 2017 and the date in which Defendants replace the current online and mail-in forms with those described directly above. The mailing shall provide all such individuals with the ready opportunity to update their voter registration information. This mailing shall include: (1) a Missouri voter registration application; and (2) information about the polling location for the address where the mailing was sent. This does not include individuals who may have previously used the Department's online or mail-in change-of-address system, but who have had their record subsequently overlaid by another transaction, such as an in-person renewal or National Change of Address update. It is further

ORDERED the other specific relief sought by Plaintiffs in the motion for preliminary injunction is denied until final decision on the merits. It is further

ORDERED this matter is set for telephone conference on **Wednesday, September 26, 2018 at 10:30 CST.**

IT IS SO ORDERED.


DATE: <u>September 21, 2018</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT