# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MISSOURI, ST. LOUIS A. PHILIP RANDOLPH INSTITUTE, and GREATER KANSAS CITY A. PHILIP RANDOLPH INSTITUTE,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOHN R. ASHCROFT,<br>in his official capacity as the Missouri Secretary of State, and<br><br>JOEL W. WALTERS,<br>in his official capacity as the Director of the Missouri Department of Revenue,<br><br>    Defendants. | No. 2:18-cv-04073-BCW |

## SECOND AMENDED COMPLAINT[1]

1. This action concerns the ongoing failure of Defendant officials of the State of Missouri to comply with portions of the "Motor Voter" provisions of the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.* ("NVRA").

2. Section 5 of the NVRA requires states to provide voter registration opportunities when individuals apply for or renew their driver's and nondriver's licenses (together, "licenses"). It further requires that when a voter updates their address information with the state motor vehicle agency, the state must automatically update the individual's voter registration record as well, unless the voter specifically declines to have their voter-registration information updated.[2] This change-of-address provision is central to the NVRA because it allows localities to maintain

---

[1] Defendants have provided in writing their consent to the filing of this second amended complaint. *See* Fed. R. Civ. P. 15(a)(2).

[2] In this complaint, "they" and "their" are used rather than "he" or "she" to remain gender neutral.

accurate voter rolls, while placing little to no burden on the voter. Moreover, failure of states to update registration information can seriously abridge the ability of voters to cast their ballots.

3. The Missouri Secretary of State and the Director of the state motor vehicle agency, the Department of Revenue ("DOR"), are flouting their NVRA obligations with respect to change-of-address transactions and mail transactions for active-duty military personnel and their dependents. Rather than address these violations after Plaintiffs provided notice, Defendants made the violations worse.

4. Defendants' violations have concrete consequences for the voters of Missouri, up to and including total disenfranchisement. The scope of the impact on voters with respect to change-of-address allegations is particularly notable. According to United States Census data, in 2015 and 2016, over 580,000 Missourians moved within the State, 200,000 of them to a different county. For those who move from one county to another without updating their voting registration address before the registration deadline, Missouri will not count their vote at all. If the voter has moved from one election jurisdiction to another, for instance from St. Louis City to St. Louis County, that voter's ballot will be discarded—even in elections for nationwide or statewide offices.

5. Furthermore, when a voter moves within an election jurisdiction but no registration update occurs, that voter must cast a provisional ballot. This itself places a burden on the voter, and further harms them because part of their ballot may not be counted if it is not cast in the polling place that serves the voter's then-current address. Accordingly, DOR's accurate transmittal of address changes is pivotal to the ability of Missouri voters to cast a ballot and have it counted.

6. Because DOR does not provide the voter-registration services required by the NVRA, Missouri citizens cannot rely on the State and local governments to protect their fundamental right to vote. This is particularly true for online transactions, where Missouri citizens

receive only the information that appears on their computer or phone screens. When DOR makes no mention of voter registration services on those interfaces, it leaves Missouri citizens without the opportunity to participate in their democracy. Although Plaintiffs and other nonprofit organizations have tried to fill the gap, in doing so they expend their limited resources to ensure voters are properly and timely registered. Defendants' violations require these organizations to divert resources away from their other activities, which include voter education and civic engagement efforts.

## SUMMARY OF VIOLATIONS

7. In this action, Plaintiffs League of Women Voters of Missouri and the St. Louis and Greater Kansas City chapters of the A. Philip Randolph Institute seek to bring DOR and the Missouri Secretary of State into compliance with the "Motor Voter" provisions of the NVRA.

8. The NVRA's "Motor Voter" provisions are intended to streamline the federal voter registration process, improve accessibility to voter registration, and increase the number of qualified voters properly registered. *See, e.g.*, S. Rep. No. 103-6, at 5 (1993) ("[I]ncorporating voter registration into the drivers licensing process provides a secure and convenient method for registering voters; an effective means of reaching groups of individuals generally considered hard-to-reach for voting purposes . . . ; and a procedure for keeping rolls current through contact with licensees who change addresses[.]").

9. To accomplish these objectives, Congress enacted Section 5 of the NVRA, 52 U.S.C. § 20504 ("Section 5").

10. Section 5 requires motor vehicle agencies to provide voter registration services to citizens who engage in certain types of interactions—commonly referred to as "covered transactions."

11. Specifically, Section 5 requires that when individuals notify a motor vehicle agency of a change of address, their voter registration address be automatically updated unless

3

they affirmatively state that the change of address is not for voter registration purposes. *Id.* §
20405(d).[3]

12.     Section 5 also requires that motor vehicle agencies "include a voter registration
form . . . as part of an application for," or renewal of, a driver's license or nondriver's license. *Id.*
§ 20504(c)(1); *see also id.* § 20504(a)(1). Voter registration forms supplied as part of this process
"may not require any information that duplicates information" provided by the applicant in other
portions of the application, "other than a second signature." *Id.* § 20504(c)(2). However, voter
registration forms must include an attestation of eligibility, along with disclosures noting that a
DOR client's decision to register—or not to register—to vote will remain confidential. *See id.* §
20504(c)(2)(C)-(D).

13.     Motor vehicle agencies are responsible for transmitting voter registration
information received during these covered transactions to the appropriate election officials within
ten days of acceptance or, for transactions that occur within five days of the deadline to register to
vote in an election, within five days. *See* 52 U.S.C. § 20504(e).

14.     These requirements must be met regardless of whether a covered transaction
takes place in-person at a motor vehicle office, online, by mail, over the phone, or through other
remote means.

15.     In Missouri, DOR and the Missouri Secretary of State are tasked with ensuring
that the State is providing the voter registration services required by Section 5 of the NVRA.

16.     DOR is responsible for "issu[ing], renew[ing], suspend[ing], revok[ing], and
reinstat[ing] driver and nondriver licenses and driving permits." *See* Missouri Department of
Revenue, About the Missouri Department of Revenue, http://dor.mo.gov/aboutdor/ (last visited
Apr. 16, 2018). Such transactions may take place at contracted Department of Motor Vehicles

---

[3] The NVRA defines a "motor vehicle driver's license" as including "any personal identification document
issued by a State motor vehicle authority." 52 U.S.C. § 20502(3). This definition encompasses all state-
issued nondriver's licenses.

("DMV") offices throughout the State, through the U.S. mail, or through online options on DOR's website.

17.     The Missouri Secretary of State is the State's chief election official and, as such, is responsible for coordinating State responsibilities under the NVRA. *See* 52 U.S.C. § 20509; Mo. Rev. Stat. § 115.136(1). The Secretary's responsibilities include, but are not limited to, ensuring DOR complies with Section 5.

18.     The Director of DOR and the Missouri Secretary of State are failing to meet their NVRA obligations with respect to change-of-address transactions and mail transactions for active-duty military personnel and their dependents.

19.     *First*, DOR is not complying with the NVRA's requirements related to change-of-address transactions. When DOR clients use the agency's online change-of-address portal or mail-in change-of-address form to update the information on their license, DOR does not provide clients with any voter registration services or information, much less automatically update client voter registration information as the NVRA requires. And, while DOR gives clients who conduct in-person change-of-address transactions at the DMV offices the opportunity to *opt-in* to voter registration services, this violates Defendants' obligation to update the individual's voter address unless the voter specifically opts out.

20.     *Second*, mail applications for new, renewal, or duplicate licenses used by military members and their families do not provide the required voter registration services. DOR clients using these forms are required to fill out their DOR application and then fill out an entirely separate voter registration form, where they must provide much of the same information that was provided in their application. They are required to provide duplicative information beyond a second signature and attestation of eligibility in order to register to vote—a clear violation of the NVRA.

5

21.     Separately and collectively, Defendants' conduct has caused, and will continue to cause, eligible citizens of Missouri to be deprived of the federally-mandated opportunity to register to vote and update their voter registration on a regular basis when they conduct business with DOR.

22.     Plaintiffs notified Defendants of their violations of Section 5 of the NVRA by letter dated July 6, 2017, as required by 52 U.S.C. § 20510(b), initiating a statutory 90-day waiting period. *See* Exhibit A. At the end of the 90-day notice period, Defendants had made no effort to engage with Plaintiffs regarding the issues raised in the July 6, 2017 notice letter. However, Plaintiffs sent further correspondence to urge Defendants to take action to rectify the violations of the NVRA they identified. *See* Exhibit B (October 25, 2017 letter to Defendant Ashcroft, copying Defendant Walters); Exhibit C (October 27, 2017 letter to Defendant Walters, copying Defendant Ashcroft). Plaintiffs followed up with additional phone calls and electronic correspondence in an effort to work with the State to remedy the compliance violations.

23.     Despite these efforts, Defendants have not only failed to correct the violations identified in the July notice letter to date, they have failed to substantively respond to any communications about the violations. To remedy these violations and protect the rights of their members, Plaintiffs bring this action for declaratory and injunctive relief. Specifically, Plaintiffs ask this Court to declare that Defendants are in violation of Section 5 of the NVRA, and to order such injunctive relief as is required to ensure that Defendants and their officers and agents promptly and fully correct those violations.

## JURISDICTION AND VENUE

24.     Plaintiffs bring this action under Section 11(b) of the NVRA, 52 U.S.C. § 20510(b).

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

6

26. This Court has personal jurisdiction over each Defendant because each is a citizen of the State of Missouri and each of the acts and omissions giving rise to this action occurred in Missouri.

27. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district, and each Defendant resides in and conducts business in this district.

**PARTIES**

28. Plaintiff LEAGUE OF WOMEN VOTERS OF MISSOURI (the "League") is a state chapter of the League of Women Voters. Formed in 1920, the League is a nonpartisan political organization that encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences policy through education and advocacy. The League works to ensure that every citizen has the opportunity and information to register and exercise their right to vote.

29. The Missouri League includes eight active, local chapters: LWV Southwest MO (Springfield), LWV Southeast MO (Cape Girardeau), LWV Metro St. Louis, LWV Moberly-Randolph County, LWV Mexico-Audrain County, LWV Columbia-Boone County, LWV Sedalia-Pettis County, and LWV KC/J/CP Counties - Jackson, Clay, Platte.

30. The League has registered voters and conducted issue-based outreach throughout Missouri. It regularly conducts a variety of voter registration activities, which include organizing and participating in voter registration efforts at community events, among other places, and participating in National Voter Registration Day. This year, among other things, the League plans to continue its voter registration activities at high schools, community colleges, and other community events.

31. When the League conducts voter registration, League members must regularly educate Missouri residents on the need to update their voter registration address if they have

7

moved. League members regularly collect voter registration forms from individuals who are already registered to vote but who have moved and need to update their address for voter registration.

32.     Upon information and belief, a substantial portion of the individuals registered by League members who were not registered at their current residences have had contact with DOR and would have updated their voter registration without the League's assistance had Defendants complied with their obligations under Section 5 of the NVRA.

33.     As a direct result of Defendants' Section 5 NVRA violations, the League has had to divert time and resources to additional voter registration efforts, which it would have otherwise directed toward its education and advocacy efforts, including educating the public about ballot initiatives and candidates, promoting higher voter turnout, and publishing education materials about voting and candidates. This education work includes creating and publicizing non-partisan, balanced materials on candidates and ballot issues, and is essential to the League's mission because it helps voters feel informed and thus encourages voters to go to the polls and vote. The League would have more resources, such as additional volunteer time, to devote to these efforts if not for voter registration gaps caused by Defendants' Section 5 noncompliance. In particular, the League would be able to make their education efforts more robust and prepare materials like PowerPoint presentations, YouTube videos, camera-ready pdf documents, and better developed talking points were it not for the resource drain caused by the Defendants' NVRA violations.

34.     The League is a membership organization with members across the State of Missouri. Its members include individuals who have Missouri licenses and are also registered to vote, who have moved or otherwise need to update their address, or who will move and need to update their address in the near future. League members were harmed and will be harmed in the future because of Defendants' ongoing violations of Section 5 of the NVRA during change-of-address transactions.

8

35.     The ST. LOUIS CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE ("APRI St. Louis") is a local chapter of the A. Philip Randolph Institute, a national organization for African-American trade unionists and community activists, established in 1965 to forge an alliance between the civil rights and labor movements. APRI is a senior constituency group of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO").

36.     APRI St. Louis focuses the bulk of its work on voter education, registration, and outreach efforts at community events, churches, and schools. These voter registration efforts have traditionally targeted underserved communities and areas where a high proportion of eligible voters are not registered at their current residence.

37.     APRI St. Louis allots a significant amount of time and organizational resources, such as volunteer time, to voter registration efforts in service of its members and the constituencies it serves. These voter registration efforts have included and will include in the future, without limitation, conducting registration drives at large churches, community health fairs, and schools.

38.     When APRI St. Louis conducts voter registration activities, it must regularly educate Missouri residents on the need to update their voter registration address if they have moved. APRI regularly collects voter registration forms from individuals who are already registered to vote but who have moved and need to update their voter registration address, particularly in the low-income areas where APRI St. Louis conducts a significant portion of its voter registration work, and where populations are more mobile and move frequently.

39.     On information and belief, a substantial proportion of the individuals reached by APRI St. Louis's voter registration efforts have had contact with DOR and could have registered to vote or updated their registration without the assistance of APRI St. Louis had Defendants complied with their obligations under the NVRA.

9

40.     As a direct result of Defendants' Section 5 NVRA violations, APRI St. Louis has diverted time and resources to voter registration efforts that would have otherwise been directed toward other voter education, outreach, and advocacy efforts. This year, among other things, APRI St. Louis plans to engage in community education and organizing efforts regarding ballot initiatives—efforts toward which it would devote more resources if not for voter registration gaps caused by Defendants' Section 5 noncompliance.

41.     The GREATER KANSAS CITY CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE ("APRI GKC") is also a local chapter of the A. Philip Randolph Institute, a senior constituency group of the AFL-CIO.

42.     Like APRI St. Louis, APRI GKC's work focuses on voter education, registration, and outreach. APRI GKC regularly conducts and participates in a variety of voter registration activities, including voter registration efforts at community events, churches, and schools. These voter registration efforts have traditionally focused on underserved communities and areas where a high number of individuals reside who are not registered at their current residence.

43.     APRI GKC allots a significant amount of time and organizational resources, such as volunteer time, to voter registration efforts in service of its members and the constituencies it serves. APRI GKC's engages in voter registration drives at union meetings, schools, libraries, and local businesses.

44.     When APRI GKC conducts voter registration, it must regularly educate Missouri residents on the need to update their voter registration address if they have moved. APRI GKC members frequently collect voter registration forms from individuals who are already registered to vote but who have moved and need to update their address for voter registration, particularly in the low-income areas where APRI GKC conducts a significant portion of its voter registration work.

45.     On information and belief, a substantial proportion of the individuals reached by APRI GKC's voter registration efforts have had contact with DOR and could have registered to vote or updated their registration without the assistance of APRI GKC had Defendants complied with their obligations under the NVRA.

46.     As a direct result of Defendants' Section 5 NVRA violations, APRI GKC has diverted time and resources to voter registration efforts that would have otherwise been directed toward other voter education, outreach, and advocacy efforts. This year, among other things, APRI GKC plans hold forums on issues and candidates, and to focus on advocacy related to a state ballot initiative and increased involvement in diversity in apprenticeship programs—efforts toward which it would devote more resources if not for the voter registration gaps caused by Defendants' Section 5 noncompliance.

47.     The League, APRI St. Louis, and APRI GKC (collectively "Plaintiffs") have individually and collectively suffered and will continue to suffer direct harm from the Defendants' noncompliance with Section 5 of the NVRA. Because Plaintiffs have had to divert their limited resources to provide Missouri residents with voter registration services that should have been provided through DOR, Plaintiffs have been unable to conduct other activities important to their respective missions.

48.     These injuries to the Plaintiffs will continue so long as Defendants fail to comply with their obligations under the NVRA.

49.     Defendant JOHN R. ASHCROFT is the Missouri Secretary of State. Pursuant to Mo. Rev. Stat. § 115.136.1 (2016), Defendant Ashcroft is "the chief state election official responsible for the coordination of state responsibilities under the National Voter Registration Act of 1993." As such, Defendant Ashcroft is responsible for overseeing the administration of election processes throughout the State of Missouri, including in this judicial district. In his official capacity, Defendant Ashcroft, among other things, oversees the conduct of local elections,

the operation of voting sites, and the maintenance of voter registration lists. And, he is responsible for the coordination of Missouri's responsibilities under the NVRA, including but not limited to ensuring DOR complies with Section 5. *See* 52 U.S.C. § 20509; *see also* Mo. Rev. Stat. § 115.136.1 (2016). The Secretary of State failed to fulfill his obligations by, without limitation, allowing DOR to continue to use in-person, mail, and online processes that violate the NVRA.

50.     Defendant JOEL WALTERS is Director of the Missouri DOR. In this capacity, Defendant Walters oversees the daily operations of DOR, which oversees DMV offices throughout the State. In Missouri, DOR is the state entity responsible for accepting and processing all applications for, renewals of, and changes of address for licenses. As such, DOR is required to provide the voter registration services detailed in Section 5 of the NVRA and Missouri state law. 52 U.S.C. § 20504(a)(1); Mo. Rev. Stat. § 115.160 (2016). In his official capacity as Director of DOR, Defendant Walters is responsible for ensuring that DOR is in compliance with Section 5 of the NVRA and Missouri law. *See, e.g.*, Mo. Rev. Stat. § 115.160 (2016).

## FACTUAL ALLEGATIONS

51.     Defendants are violating Section 5 of the NVRA by and through their conduct, policies, practices, procedures, and failure to establish appropriate systems and protocols.

### Failure to Provide Required Voter Registration Services
### During Change-of-Address Transactions

52.     Section 5 requires that a client's voter registration information must be updated each time the client changes the address for their license, unless the client requests that their voter registration information not be altered.

53.     Defendants fail to provide Missourians with required voter registration services during online, mail, and in-person change-of-address transactions.

12

**Online Transactions**

54. DOR's online change-of-address system has been and remains non-compliant with the NVRA. As of July 2017, DOR's online change-of-address system was not linked with Missouri's voter registration systems or personnel in any way and thus did not provide clients the opportunity to update their voter registration information during online DOR transactions. Instead, clients were directed to visit the Secretary of State's website, which required DOR clients to complete a separate change-of-address transaction in which they had to download, fill out, and mail a separate voter registration application to their local election authority in order to update their voter registration information.

55. DOR changed its online change-of-address system in August 2017, removing all references to voter registration in the online change-of-address portal. DOR's current online change-of-address system does not provide clients updating their driver's license records with information indicating they need to update their voter registration information if they have moved or instructions on how they can update their voter registration information, let alone the automatic update process required by the NVRA. Clients are not provided with the opportunity to indicate whether or not changes of address submitted to DOR should also be considered for voter registration purposes. *See, e.g.*, Missouri Department of Revenue, Request for Change of Mail-To Address, https://sa.dor.mo.gov/coa/?check=true (last visited Apr. 16, 2018). Exhibit D.

**Mail Transactions**

56. DOR also fails to provide voter registration services to clients who submit a request to change the address associated with their license by mail. Such requests are made using DOR Form 4160. As of April 2016, DOR offices were using at least two versions of Form 4160: those designed in 2006 and 2015. Form 4160 was later revised in August 2016. In August 2017 and January 2018, after receiving Plaintiffs' Notice Letter, DOR changed the form again. None of the versions of Form 4160 mention voter registration or provide clients with the opportunity to

13

indicate whether or not changes of address submitted to DOR should also be considered for voter registration purposes. *See, e.g.*, Missouri Department of Revenue, Form 4160 Address Change Request, http://dor.mo.gov/forms/4160.pdf (last revised Jan. 2018). Exhibit E.

**In-Person Transactions**

57.     DOR clients conducting change-of-address transactions in person at DMV offices are offered voter registration services, but the manner in which they are provided such services does not comply with Section 5 of the NVRA. Section 5 mandates that, when a voter engages in a change-of-address transaction through DOR, the voter's registration information must be automatically updated unless the voter affirmatively states "that the change of address is not for voter registration services." 52 U.S.C. § 20504(d). This creates a system where a registered voter has to opt-out of having their address updated by DOR. Yet DOR's in-person change-of-address system creates an *opt-in*, rather than *opt-out*, system. According to Missouri's Uniform License Issuance Manual ("ULIM"), when a DOR client applies in-person to update the address on their license, DOR procedure requires the client to affirmatively request that their voter registration information be updated, rather than mandate that a client's voter registration address be updated unless the client opts out.

58.     DOR's failure to meet the NVRA's requirements with respect to change-of-address transactions undercut's Missouri's ability to keep its "vot[er] rolls current and correct." S. Rep. No. 103-6, at 11 (1993).

**Mail-In License Applications for Military Members and their Families Require Duplicative Information to Complete a Voter Registration Application**

59.     The NVRA requires that a voter registration application be included as part of the form used to apply for or renew a license or identification card, 52 U.S.C. § 20504(c)(1), and specifically prohibits the voter registration application from "requir[ing] any information that duplicates information required in" other parts of the form other than a signature and an attestation of eligibility. *See id.* § 20504(c)(2)(A),(C).

14

60.     Mail applications for new, renewal, or duplicate licenses used by active-duty military members and their families do not comport with these requirements.

61.     In Missouri, "active duty military personnel or [their] dependent[s who] are temporarily out-of-state or country" may use DOR Form 4317 to "renew [a] driver['s] license or obtain a duplicate driver['s] license." *See* Missouri Department of Revenue, Form 4317 Mail-in Driver License Application, http://dor.mo.gov/forms/4317.pdf (last revised Nov. 2017). Exhibit F.

62.     "[A]ctive-duty members of the armed forces [who are] temporarily mobilized and deployed outside the state of Missouri" may also use DOR Form 4318 "to obtain a new, renewal or duplicate permit, driver, or nondriver license." *See* Missouri Department of Revenue, Form 4318 Military Application With Power of Attorney (For Persons Mobilized and Deployed with the U.S. Armed Forces, http://dor.mo.gov/forms/4318.pdf (last visited Apr. 16, 2018). Exhibit G.

63.     DOR Forms 4317 and 4318 both include a separate and additional form for voter registration at the end, which require DOR clients to provide duplicative information— information already provided in Form 4317 and 4318 (such as first, middle, and last name; date of birth; gender; home address; mailing address; and the last four digits of the client's social security number)—in order to register to vote or update their registration information.

64.     This process violates the NVRA.

### Plaintiffs Timely Notified Defendants of Their NVRA Violations

65.     On July 6, 2017, Plaintiffs, through their counsel, sent a letter by mail and email to Defendant Ashcroft notifying him that the State of Missouri was failing to meet its obligations under Section 5 of the NVRA. Defendant Walters was sent a copy of the letter on the same day. *See* Exhibit A.

15

66. The July 2017 letter served as notice pursuant to 52 U.S.C. § 20510(b), and initiated a statutory 90-day waiting period before litigation could be commenced.

67. At the end of the 90-day notice period, Defendants failed to provide a substantive response and did not address the issues raised in the July 6, 2017 notice letter.

68. Defendants have not taken the steps necessary to remedy their noncompliance with Section 5 of the NVRA.

## CLAIM FOR RELIEF

### Violation of Section 5 of the National Voter Registration Act of 1993

69. Plaintiffs incorporate herein all the paragraphs of this Second Amended Complaint.

70. As a consequence of their past and continuing failure to provide required voter registration services, Defendants have violated, and continue to violate, Section 5 of the NVRA, 52 U.S.C. § 20504—Defendant Walters by DOR's failure to implement the required voter registration services, and Defendant Ashcroft by his failure to coordinate and/or ensure DOR's compliance.

71. The failure of Defendants to comply with Section 5 has injured and will continue to injure the Plaintiffs because Plaintiffs have been required to invest additional resources in voter registration and divert resources from other activities critical to their missions. Remediation of these ongoing violations will permit Plaintiffs to allocate their scarce resources to other important activities.

72. The failure of Defendants to comply with Section 5 has also injured and will continue to injure the League's members. Remediation of these ongoing violations will ensure that the League's members receive the voter registration services required by the NVRA during future DOR transactions.

16

73.     Plaintiffs are aggrieved by the Defendants' past and continuing violations of the NVRA, and have no adequate remedy at law. Declaratory and injunctive relief is required to remedy past and continuing violations of Section 5 and to ensure the Defendants' future compliance with the NVRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

i.      Declare that the Defendants have violated, and are continuing to violate, Section 5 of the NVRA, 52 U.S.C. § 20504, by failing to provide NVRA-compliant voter registration opportunities during: in-person, online, and mail change-of-address transactions and mail-renewal transactions for active-duty military personnel and their dependents;

ii.     Issue preliminary and permanent injunctions ordering the Defendants, their officers, agents, employees, and successors in office, and all persons in active concert or participation with them, to develop, implement, and enforce practices and policies to ensure compliance with Section 5 of the NVRA;

iii.    Direct the Defendants, under a court-approved plan with appropriate mandatory reporting and monitoring requirements, to take all actions necessary to remedy the past and continuing violations of Section 5, including, without limitation, ensuring that all persons affected by Defendants' violations are provided opportunities to register to vote or to change their voter registration addresses to enable them to vote in the next federal election cycle, or opt-out if desired;

iv.     Direct Defendants, under a court-approved plan with appropriate mandatory reporting and monitoring requirements to take all actions necessary to ensure future compliance with the requirements of Section 5, including, without limitation, to implement practices and policies for offering compliant voter registration services to individuals engaging in license

17

transactions in-person, online, and by mail, and to ensure DOR offices and personnel are conducting compliant in-person covered transactions;

     v.     Award Plaintiffs reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action, pursuant to 52 U.S.C. § 20510(c);

     vi.     Retain jurisdiction over this action to ensure that Defendants comply with any order(s) issued by this Court and with their obligations under the NVRA and Missouri statute; and

     vii.     Grant such additional relief as this Court deems just and proper.

Respectfully Submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
Telephone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU OF MISSOURI FOUNDATION
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Telephone: (816) 470-9938
gwilcox@aclu-mo.org

Denise D. Lieberman, #47013
Sabrina Khan*
ADVANCEMENT PROJECT
1220 L Street NW, Suite 850
Washington, DC 20005
Telephone: (314) 780-1833
Fax: (202) 728-9557
dlieberman@advancementproject.org
skhan@advancementproject.org

18

Naila S. Awan*
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: (212) 485-6065
nawan@demos.org

Allie Boldt* **
Chiraag Bains * **
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746
CBains@demos.org

Sarah Brannon* **
Davin M. Rosborough* **
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Telephone: (202) 675-2337
sbrannon@aclu.org
drosborough@aclu.org

Joshua B. Picker*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Fax: (212) 841-1010
jpicker@cov.com

*Attorneys for Plaintiffs*

\*   Admitted pro hac vice

\*\*   *Not admitted in the District of Columbia;
     practice limited pursuant to D.C. App. R.
     49(c)(3).*

19

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing Second Amended Complaint was filed on this 7th day of November, 2018 through the Court's Electronic Filing System. Parties will be served, and may obtain copies electronically, through the operation of the Electronic Filing System.

/s/ Anthony E. Rothert