# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

**LEAGUE OF WOMEN VOTERS OF MISSOURI, ET AL.,**

        Plaintiffs,

    v.

**JOHN R. ASHCROFT, ET AL.,**

        Defendants.

Civil Action No. 2:18-cv-04073-BCW

## <u>SUGGESTIONS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES</u>

# **Table of Contents**

Table of Contents ........................................................................................................ 1

Table of Authorities.................................................................................................... 2

    I.    Fee-Shifting in NVRA Cases. ............................................................. 5

    II.    Plaintiffs are the Prevailing Party.................................................... 6

    III.    Computation of the Lodestar. ........................................................ 10

        A.    Hourly Rates .......................................................................... 10

        B.    Hours...................................................................................... 14

    IV.    Voluntary Reduction to the Lodestar............................................. 15

    V.    Non-Taxable Expenses.................................................................... 16

    VI.    Conclusion. ..................................................................................... 17

    CERTIFICATE OF SERVICE............................................................................ 3

## Table of Authorities

Page(s)

**Cases**

*A.J. ex rel L.B. v. Kierst,*
 56 F.3d 849 (8th Cir. 1995) ................................................................. 16

*Adcock-Ladd v. Sec. of Treas.,*
 227 F.3d 343 (6th Cir. 2000) ............................................................... 12

*Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n,*
 686 F.2d 1278 (8th Cir. 1982) .............................................................. 8

*Blum v. Stenson,*
 465 U.S. 886 (1984) ............................................................................. 10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human,*
 532 U.S. 598 (2001) ............................................................................. 7

*Casey v. City of Cabool,*
 12 F.3d 799 (8th Cir. 1993) .............................................. 7, 10, 11, 14

*Hendrickson v. Branstad,*
 934 F.2d 158 (8th Cir. 1991) ............................................................... 10

*Hensley v. Eckerhart,*
 461 U.S. 424 (1983) ......................................................................... 7, 9, 10

*Henson v. Columbus Bank & Trust Co.,*
 770 F.2d 1566 (11th Cir. 1985) ........................................................... 15

*Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs,*
 553 F.3d 487 (7th Cir. 2009) ............................................................... 12

*League of Women Voters of Mo. v. Ashcroft,*
 336 F. Supp. 3d 998 (W.D. Mo. 2018) ............................................... 7, 8

*Missouri v. Jenkins by Agyei,*
 491 U.S. 274 (1989) ......................................................................... 11, 14

*Moore v. City of Des Moines,*
 766 F.2d 343 (8th Cir. 1985) ............................................................... 11

*Moreno v. City of Sacramento,*
 534 F.3d 1106 (9th Cir. 2008) ............................................................. 15

2

*N. Cheyenne Tribe v. Jackson*,
   433 F.3d 1083 (8th Cir. 2006) ............................................................... 7

*Nat'l Coal. for Students with Disabilities v. Bush*,
   173 F. Supp. 2d 1272 (N.D. Fla. 2001) ................................................ 6

*Newman v. Piggie Park Enterprises, Inc.*,
   390 U.S. 400, 19 L.Ed.2d 1263, 88 S.Ct. 964 (1968).......................... 6

*Parrish v. Sollecito*,
   280 F. Supp. 2d 145 (S.D.N.Y. 2003) ................................................ 12

*People Against Police Violence v. City of Pittsburgh*,
   520 F.3d 226 (3d Cir. 2008) ............................................................ 8, 9

*Perdue v. Kenny A.*,
   559 U.S. 542 (2010)........................................................................... 11

*Perotti v. Seiter*,
   935 F.2d 761 (6th Cir. 1991) ............................................................. 17

*Project Vote v. Blackwell*,
   2009 WL 917737 (N.D. Ohio Mar. 31, 2009) ..................................... 6

*Project Vote/Voting for Am., Inc. v. Long*,
   887 F. Supp. 2d 704 (E.D. Va. 2012) .................................................. 5

*Richlin Sec. Serv. Co. v. Chertoff*,
   553 U.S. 571 (2008)........................................................................... 14

*Riverside v. Rivera*,
   477 U.S. 561 ...................................................................................... 15

*Rogers Grp., Inc. v. City of Fayetteville*,
   683 F.3d 903 (8th Cir. 2012) ........................................................... 7, 8

*Rose Confections, Inc. v. Ambrosia Chocolate Co., Div. of W.R. Grace & Co.*,
   816 F.2d 381 (8th Cir. 1987) ............................................................. 16

*Shakopee Mdewakanton Sioux Cmty. v. Prior Lake*,
   771 F.2d 1153 (8th Cir. 1985) ........................................................... 11

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989)............................................................................. 7

*U.S. ex rel. Peterson v. Sanborn Map Co., Inc.*,
   2014 WL 2815592 (E.D. Mo. June 23, 2014) .................................... 12

3

*Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)............................................................................................... 10

*Warnock v. Archer*,
    397 F.3d 1024 (8th Cir. 2005) ............................................................................. 17

*White v. McKinley*,
    2009 WL 813372 (W.D. Mo. Mar. 26, 2009)........................................................ 12

*Williams v. ConAgra Poultry Co.*,
    113 F. App'x 725 (8th Cir. 2004) ......................................................................... 17

**Statutes**

28 U.S.C. § 1920 ............................................................................................................ 5

52 U.S.C. § 20510(c)...................................................................................................... 5

**Other Authorities**

1976 U.S.C.C.A.N. 5908 ............................................................................................... 6

S. Rep. No. 1011 ........................................................................................................... 6

4

For the reasons that follow, Plaintiffs—as the prevailing party in this voting rights litigation—are entitled to an award of attorneys' fees and non-taxable costs pursuant to 52 U.S.C. § 20510(c).[1]

## I.     Fee-Shifting in NVRA Cases.

The National Voter Registration Act ("NVRA") provides that a "court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." 52 U.S.C. § 20510(c).  "Courts apply the same standards applicable to other federal civil rights fee shifting statutes when considering an award under [the NVRA]." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 708–09 (E.D. Va. 2012). Thus, although the NVRA fee-shifting "provision[] speaks in discretionary terms, a prevailing plaintiff ordinarily is entitled to an award of fees, unless special circumstances would render such an award unjust."  *Nat'l Coal. for Students with Disabilities v. Bush*, 173 F. Supp. 2d 1272, 1276 (N.D. Fla. 2001) (finding defendants in NVRA action liable for attorney's fees); *see also Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, at *4 (N.D. Ohio Mar. 31, 2009) (noting, in awarding NVRA plaintiffs $321,485 in fees and costs, that "a prevailing plaintiff in a federal civil rights suit ordinarily should recover reasonable attorneys' fees and costs 'unless special circumstances would render such an award unjust'") (citation omitted).

The Eighth Circuit has explained that the fee-shifting provisions in litigation such as this rightly encourage private citizens to bring suits in the public interest:

> Congress intended that "in computing the fee, counsel for
> prevailing parties should be paid, as is traditional for attorneys

---

[1] Plaintiffs have separately filed a bill of costs for reimbursement of taxable costs. *See* 28 U.S.C. § 1920.

compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See id.* A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 19 L.Ed.2d 1263, 88 S.Ct. 964 (1968).

In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908.

*Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (alterations in original). Attorneys' fees are available to successful litigants in civil rights cases "to ensure 'effective access to the judicial process'" for litigants with meritorious claims. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Casey*, 12 F.3d at 805.

## II.     Plaintiffs are the Prevailing Party.

Plaintiffs are the prevailing party and entitled to attorneys' fees.  "A prevailing party [is] one who has succeeded on [a] significant claim affording [them] some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989); *see also Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 909 (8th Cir. 2012) ("To obtain 'an award of litigation costs,' a party must be a 'prevailing' or 'successful' party, i.e., 'one who has been awarded some relief by the court.'") (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532

6

U.S. 598, 603 (2001)).

As an initial matter, Defendants do not appear to dispute that Plaintiffs are the prevailing party. *See* Settlement Agreement § II(E) (attached as Ex. 1) (stating that, "[i]n the context of [this] motion practice, Defendants agree not to contest that Plaintiffs are, at least in part, prevailing parties, provided that this Agreement does not limit or foreclose any argument Defendants wish to make as to the amount of any award of attorneys' fees and costs . . . .").

Even were that not the case, Plaintiffs firmly meet the legal standard for prevailing parties. It is enough that Plaintiffs sought and obtained a preliminary injunction that required Defendants to alter their behavior. *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1001 (W.D. Mo. 2018). The preliminary injunction issued by this Court was "sufficiently akin to final relief on the merits to confer prevailing party status." *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006); *see also Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1290 (8th Cir. 1982) (noting that "[e]ven preliminary or temporary relief granted by the district court may be sufficient to make a plaintiff a 'prevailing party'"). Indeed, in *Rogers Group*, the Eighth Circuit found a plaintiff was the prevailing party where it had been awarded a preliminary injunction but the court was not required make a final judgment on the merits because the defendant voluntarily altered its behavior in such a way as to render the controversy moot. 683 F.3d at 910-11.

Here, unlike cases in which a preliminary injunction merely preserves the status quo, the Court found Plaintiffs were likely to succeed on the merits and ordered affirmative changes to Defendants' conduct, including mailing notifications and voter registration forms to over 20,000 Missourians and altering the language on the DOR website. *See League of Women Voters of Mo.*, 336 F. Supp. 3d at 1007. Defendant Ashcroft even admitted that it was Plaintiffs' litigation of this case that forced the Department of Revenue to alter its conduct

7

significantly, with his spokesperson noting that "he's disappointed that" these changes "couldn't have been done until [DOR was] sued . . . . They refused to do it until they were sued." Jack Suntrup, *Missouri settles federal lawsuit by agreeing to make 'Motor Voter' registration easier*, St. Louis Post-Dispatch (Nov. 21, 2019), available at https://www.stltoday.com/news/local/govt-and-politics/missouri-settles-federal-lawsuit-by-agreeing-to-make-motor-voter/article_4a565b17-0a3b-58be-bf7c-21e46ef9acfe.amp.html (See Ex. 2). Therefore, because Plaintiffs' pursuit of this litigation and the Court's granting of their preliminary injunction motion caused Defendants to significantly alter their conduct, Plaintiffs are prevailing parties.

Moreover, Plaintiffs are the prevailing party as to entirety of the case and not just the preliminary injunction stage. This case is analogous to *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008). In that case, as here, "[a]t the end of the proceedings, plaintiffs had achieved precisely what they sought on an enduring basis, and that success was a result of plaintiffs' efforts and court-enforced victories rather than defendant's voluntary actions." *Id.* at 236. This was true despite the fact that "[t]he Court lifted the preliminary injunction and closed the case only after the City passed a revised ordinance which, the parties agreed, corrected all of the alleged constitutional infirmities of the challenged ordinance." *Id.* at 228. In a decision affirmed by the Third Circuit, the District Court based the lodestar "on the full duration of the proceedings." *Id.* at 236. Quoting the Supreme Court, the Third Circuit observed that: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* (citing *Hensley*, 461 U.S. at 435).

Plaintiffs sent Defendants a notice letter on July 6, 2017, informing them that they were failing to meet their voter registration obligations under the NVRA. *See* Notice Letter

8

(July 6, 2017), Dkt. No. 1-1. Plaintiffs then attempted over the course of many months to engage in negotiations by following up with Defendants by mail, electronic correspondence and phone calls. *See, e.g.*, Complaint, Dkt. No. 1, ¶ 24; Letter to Ashcroft (Oct. 25, 2017), Doc. 1-2; Letter to Walters (Oct. 27, 2017), Dkt. No. 1-3. Plaintiffs' efforts to avoid litigation were ultimately unsuccessful, however, as they were unable to get Defendants to engage with them and discuss how to resolve the matters identified in the July 2017 notice letter, *see, e.g.*, Dkt. No. 1, ¶ 25, leading Plaintiffs to file a complaint on April 17, 2018, Dkt. No. 1. In order to secure relief on the issues identified in their notice letter and brought in their Complaint, Plaintiffs had to oppose Defendant Ashcroft's motion to dismiss, *see* Suggestions in Opposition to Defendant Ashcroft's Motion to Dismiss, Dkt. No. 42, and litigate a preliminary injunction motion, which required motions practice, discovery, and a day-long trial, *see, e.g.*, Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 31; Plaintiffs' Suggestions in Reply to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 61; Oral Argument Minute Entry, Dkt. No. 78; Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Dkt. No. 84. Defendants initially fought this case tooth and nail, ignoring Plaintiffs' pre-litigation letters advising them on noncompliance with the NVRA, moving to dismiss, and contesting the propriety of preliminary injunctive relief. After a preliminary injunction was issued in September 2018, expeditious discovery (including substantial document and deposition discovery) ensued until the end of March 2019, when the parties met and made substantial progress toward settlement.

In light of the preliminary injunction decision and evidence revealed in discovery, Defendants eventually agreed to the relief Plaintiffs sought in their complaint in the form of a settlement agreement. *See, e.g.*, Stipulation and [Proposed] Order of Dismissal in Light of Settlement Agreement, Dkt. No. 149. Given the relief obtained here and course of litigation,

9

Plaintiffs are entitled to a full award of fees.

**III.    Computation of the Lodestar.**

The general principles governing the award of attorneys' fees are well settled. First, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates to determine the product or "lodestar" figure. *Hensley*, 461 U.S. at 433. The "resulting product *is presumed* to be the minimum reasonable fee to which counsel is entitled." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (internal quotations omitted) (emphasis in original); *accord Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) ("The lodestar award … is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar."); *Casey*, 12 F.3d at 805. In this regard, the Supreme Court has stated that, in determining the lodestar figure: "We . . . take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). And, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010).

*A.  Hourly Rates*

In setting reasonable attorneys' fees, the general touchstone is whether the rate is in line with those prevailing in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation. *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1985). Yet the Eighth Circuit has held that civil rights litigation may be appropriately subject to national rather than local rates. *Casey*, 12 F.3d at 805 ("A national market or a market for a particular legal specialization may provide the appropriate market") (citation & internal quotation marks omitted). Moreover, "Congress intended that fee awards

10

be calculated in the same manner for both private counsel and nonprofit legal services organizations." *Shakopee Mdewakanton Sioux Cmty. v. Prior Lake*, 771 F.2d 1153, 1160 (8th Cir. 1985).

In this case, Plaintiffs recognized that voting rights litigation is highly specialized, and, as a result, brought in out-of-state counsel with voting rights experience. *See* Rothert declaration, Ex. 3, ¶ 7. Federal courts have rated voting rights cases among the most complex tried by federal courts. According to a district court time study conducted by the Federal Judicial Center measuring the complexity and time needed to handle matters by the district courts, voting rights cases were among the top five most complex cases and were given a weight of 3.86 compared to 1.0 for an "average" case. Federal Judicial Center, 2003-2004 District Court Case-Weighting Study, Table 1, p. 5 (2005). Even beyond the normal complexity of a voting rights case, this case in particular required research into and the briefing of novel legal issues including whether Section 5 of the NVRA applies to changes of mailing address—an issue that, to Plaintiffs' knowledge, has not previously been litigated or decided in any court. Given the expertise required to litigate this matter, for purposes of determining the lodestar, the home rates of Plaintiffs' attorneys are appropriate. *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) ("[O]ur cases have consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation."); *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169–70 (S.D.N.Y. 2003) (noting that the attorney's "customary rate" is a "reasonable starting point for determining the hourly rate for purposes of a lodestar calculation").

Nonetheless, in an exercise of billing judgment, Plaintiffs' counsel have therefore reduced their rates substantially, using the U.S. Attorney's Office ("USAO") rate schedule—

11

formerly known as the *Laffey* matrix—as a guide. *See* https://www.justice.gov/usao-dc/page/file/1189846/download; *see also, e.g.*, *Adcock-Ladd v. Sec. of Treas.*, 227 F.3d 343, 347 n.3 (6th Cir. 2000) (referring to the *Laffey* matrix as "an official statement of market-supported reasonable attorney fee rates"); *White v. McKinley*, No. 05-0203-CV-W-NKL, 2009 WL 813372, at *7–8 (W.D. Mo. Mar. 26, 2009) (approving rates similar to the *Laffey* matrix and noting that "the Eighth Circuit has affirmed approval of higher hourly rates based on the specialized skill of counsel"); *U.S. ex rel. Peterson v. Sanborn Map Co., Inc.*, No. 4:11CV000902 AGF, 2014 WL 2815592, at *4 (E.D. Mo. June 23, 2014) (approving rates close to the *Laffey* matrix).

The appropriate attorney hourly rates for calculation of the lodestar, using the reduced rates found in the *Laffey* matrix for non-Missouri attorneys, are as follows:

| Name | Firm/Org. | Hours | Reduced | Source | Rate | Total | Reduced Total |
|------|-----------|-------|---------|--------|------|-------|---------------|
| Anthony E. Rothert | ACLU Mo | 37 | 28.3 | Ex. 3 | $375 | $13,875 | $10,612.50 |
| Gillian R. Wilcox | ACLU Mo | 82.3 | 28.4 | Ex. 4 | $300 | $24,690 | $8,520 |
| Sarah Brannon | ACLU Nat'l | 116.16 | 80.91 | Ex. 5 | $536 | $62,261.76 | $43,367.76 |
| Davin Rosborough | ACLU Nat'l | 424.98 | 364.57 | Ex. 6 | $410 | $174,241.80 | $149,473.70 |
| Chiraag Bains | Dēmos | 35.95 | 17.15 | Ex. 7 | $410 | $14,739.50 | $7,031.50 |
| Allison Boldt | Dēmos | 408.45 | 383.75 | Ex. 7 | $346 | $141,323.70 | $132,777.50 |
| Pamela Cataldo | Dēmos | 134.08 | 133.40 | Ex. 7 | $164 | $21,989.12 | $21,877.60 |
| Naila Awan | Dēmos | 810.63 | 719.92 | Ex. 8 | $352 | $285,341.76 | $253,411.84 |
| Miranda Galindo | Dēmos | 130.21 | 89.38 | Ex. 9 | $352 | $45,833.92 | $31,461.76 |
| Denise Lieberman | Advancement Project | 252.1 | 191.1 | Ex. 10 | $563 | $141,932.30 | $107,589.30 |
| Sabrina Khan | Advancement Project | 99.7 | 57.75 | Ex. 10 | $410 | $40,877 | $23,677.50 |
| Joshua B. Picker | Covington & | 135 | 123.65 | Ex. 11 | $352 | $47,520 | $43,524.80 |

12

| | Burling, LLP | | | | | | |
|---|---|---|---|---|---|---|---|
| Cristina Alverez | Covington & Burling, LLP | 105.4 | 98.40 | Ex. 11 | $302 | $31,830.80 | $29,716.80 |
| Madison Arent | Covington & Burling, LLP | 145.8 | 129.3 | Ex. 11 | $302 | $44,031.60 | $39,048.60 |
| Fatmata Kabia | Covington & Burling, LLP | 234.4 | 218.4 | Ex. 11 | $334 | $78,289.60 | $72,945.60 |
| Saad Rizwan | Covington & Burling, LLP | 411.8 | 397.2 | Ex. 11 | $346 | $142,482.80 | $137,431.20 |
| Paralegals and Support Staff | Covington & Burling, LLP | 190 | 190 | Ex. 11 | $164 | $31,160 | $31,160 |
| | Total: | 3,753.96 | 3,251.58 | | Total: | $1,342,420.66 | $1,143,627.96 |

Given the expertise of Plaintiffs' counsel, the uniqueness of the legal question presented, and the intricacy and importance of the state's voter registration mechanisms—as well as for the reasons provided in the supporting declarations—these rates are reasonable.[2] *See* Ex. 3 (Rothert Declaration); Ex. 4 (Wilcox Declaration); Ex. 5 (Brannon Declaration); Ex. 6 (Rosborough Declaration); Ex. 7 (Bains Declaration); Ex. 8 (Awan Declaration); Ex. 9 (Galindo Declaration); Ex. 10 (Lieberman Declaration); Ex. 11 (Picker Declaration);

The term attorney's fees "embrace[s] the fees of paralegals as well as attorneys." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008) (citing *Missouri*, 491 U.S. at 285). A total of 324.08 paralegal and support staff hours were spent on this litigation. *See* Ex.7, ¶ 17 (setting forth hours of Pamela Cataldo); Ex. 11, ¶ 7 (setting forth hours of paralegal and support staff at Covington & Burling, LLP). For the reasons explained in Mr. Bains's declaration, Ex. 7, ¶¶ 14-17, a reasonable hourly rate for Ms. Cataldo is $164.00. For the reasons explained in Mr. Picker's affidavit, Ex. 11, ¶¶ 14-17, a reasonable hourly rate for paralegals and support staff is $164.00.

---

[2] Additional evidence of the rates for the New York attorneys is further supported by the affidavit of Elizabeth S. Saylor, Ex. 12.

13

*B. Hours*

Litigating this case required the investment of a significant number of attorney and paralegal hours. In fact, Plaintiffs' attorneys spent 3,429.88 actual hours on this case in addition to 324.08 hours contributed by paralegals. This is not surprising given the complexity of this type of case. It was not until after denial of the motion to dismiss, an unsuccessful mediation session with the magistrate judge, the grant of a preliminary injunction, and significant discovery—including production of approximately 5,713 documents by Plaintiffs— that Defendants were willing to negotiate a resolution of this matter. As the Eighth Circuit has observed, parties cannot "continue to contend that they have no liability here at all, with one breath, and then assert that this case was a 'pushover' for plaintiff with the next." *Casey*, 12 F.3d at 805; *see also Riverside v. Rivera*, 477 U.S. 561, 580 n.11 ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiffs in response.") (internal quotation marks and citation omitted); *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) (explaining that while defendants are "entitled to contest [the plaintiffs' claims] vigorously . . . once they do so they cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended").

As the Ninth Circuit has explained, there is no incentive to over-lawyer a case like this:

> It must . . . be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This disinclination to

14

spend unnecessary time on a case is particularly true of already over-extended attorneys at non-profit organizations and firm attorneys working on a pro bono basis. And, as explained in the subsection below, in an attempt to reduce the sum of attorneys' fees requested, Plaintiffs' counsel has reduced the number of hours they are requesting compensation for in order to eliminate duplicative work.

The unaltered number of hours—i.e., the numbers contributed prior to a voluntary reduction—that Plaintiffs' counsel expended litigating this case are reflected in the chart, *supra*. The lodestar, and presumptive attorneys' fee, is $1,342,420.66.

## IV. Voluntary Reduction to the Lodestar.

Attorneys exercise billing judgment, and Plaintiffs' attorneys are no different here. Thus, they voluntarily reduce the lodestar to avoid any risk of seeking compensation for duplicative work or time that is excessive or unproductive. With the reductions explained below, Plaintiffs' lodestar falls well within the bounds of reasonable billing judgment.

For one, there is nothing unusual or undesirable about the use of multiple attorneys in a complex NVRA case. *A.J. ex rel L.B. v. Kierst*, 56 F.3d 849, 863-64 (8th Cir. 1995) ("The use of more than one attorney in multiple party litigation has been recognized by courts, including our own, as both desirable and common."). Indeed, Defendants have also utilized numerous attorneys, some who have entered formal appearances and others who have not. Nevertheless, Plaintiffs' counsel have adopted general rules, described in their affidavits, for reducing the hours for which they are seeking compensation from the actual hours contributed to this litigation. These include <u>not</u> seeking compensation for: (a) co-counsel telephone conferences, (b) attendance at the preliminary injunction hearing for those who did not have a speaking role at the hearing, (c) attendance at depositions by attorneys other than the first and second chair, (d) participation in settlement calls by those not taking the lead on a particular call, and (e)

15

participation in calls with the court, except for the person taking the lead for Plaintiffs. These and any other voluntary reductions by attorneys result in 502.38 fewer hours.[3]

The Eighth Circuit has also "permitted recovery of the full hourly rate for attorney-travel time." *Rose Confections, Inc. v. Ambrosia Chocolate Co., Div. of W.R. Grace & Co.*, 816 F.2d 381, 396 (8th Cir. 1987) (internal citation omitted). Ultimately, whether travel time is fully compensable is a question that lies "within the discretion given to the district court." *See Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir. 1991). In this case, Plaintiffs suggest that the travel time for out-of-state counsel be compensated at fifty percent by reducing the travel hours in half.[4]

The total modified lodestar of $1,143,627.96, which incorporates the above-noted voluntary reductions, represents a reasonable attorneys' fee award in this case.

## V. Non-Taxable Expenses.

A prevailing party in civil rights litigation is entitled to reasonable non-taxable expenses. *Warnock v. Archer,* 397 F.3d 1024, 1027 (8th Cir. 2005) (prevailing party is entitled to "items reasonably charged by attorneys to their clients"); *Williams v. ConAgra Poultry Co.*, 113 F. App'x 725, 728 (8th Cir. 2004) (unpublished) (noting that "travel expenses for attorneys and many other out-of-pocket expenses" are "properly characterized as part of an attorney's fees award, which may include expenses that a law firm would normally bill to its client"). Plaintiffs do not seek reimbursement for many out-of-pocket expenses, including travel for in-state counsel, meals, routine printing and copying (including of preliminary

---

[3] As other examples, Plaintiffs have chosen not to include attorney time during 2019 for Sarah Brannon, a supervising attorney on the case with many years of NVRA litigation experience, who nonetheless consulted on litigation and settlement strategy during this time.

[4] In-state counsel are not asking for any compensation for travel time between Kansas City and Jefferson City.

16

injection exhibits), and conference calls. They do, however, seek reimbursement for some of the out-of-pocket costs reasonably charged by attorneys to their clients, which are detailed and documented in the declarations of Mr. Rothert, Mr. Rosborough, Mr. Bains, Ms Lieberman, and Mr. Picker. These expenses total $27,484.15. Ex. 3, Ex. 6, Ex. 7, Ex. 10, Ex. 11.

Plaintiffs also request that any out-of-pocket expenses this Court determines were erroneously included in their Bill of Costs, Dkt. No. 151, be instead awarded as non-taxable expenses.

## VI.    Conclusion.

For the foregoing reasons, Plaintiffs request this Court award them attorneys' fees in the amount of $1,143,627.96 and non-taxable expenses in the amount of $27,484.15.

Respectfully Submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
Telephone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU OF MISSOURI FOUNDATION
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Telephone: (816) 470-9938
gwilcox@aclu-mo.org

Denise D. Lieberman, #47013
Sabrina Khan*
ADVANCEMENT PROJECT
1220 L Street NW, Suite 850
Washington, DC 20005

17

Telephone: (314) 780-1833
Fax: (202) 728-9557
dlieberman@advancementproject.org
skhan@advancementproject.org

Naila S. Awan*
Miranda Galindo*
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: (212) 485-6065
nawan@demos.org
mgalindo@demos.org

Chiraag Bains (MA Bar No. 673627)*
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746
cbains@demos.org

Davin M. Rosborough*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2613
drosborough@aclu.org

Sarah Brannon* **
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Telephone: (202) 675-2337
sbrannon@aclu.org

Joshua B. Picker*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Fax: (212) 841-1010
jpicker@cov.com

*Attorneys for Plaintiffs*

18

\* Admitted *pro hac vice*
\*\* Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).

## CERTIFICATE OF SERVICE

I certify that on January 6, 2020, I filed the foregoing the Clerk of the Court using the CM/ECF system, which delivered copy to all counsel of record.

/s/ Anthony E. Rothert